# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# OXFORD DIVISION

ROXANNE EVERHART                                                        PLAINTIFF

VS.                                                           CIVIL ACTION NO. 3:17-cv-188-DAS

COMMISSIONER OF SOCIAL SECURITY                        DEFENDANT

## MEMORANDUM OPINION

This matter is before the court pursuant to 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security ("Commissioner") denying the application of Roxanne Everhart for disability insurance benefits and supplemental security income under the Social Security Act. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit.

The court, having reviewed the administrative record, the briefs of the parties, the applicable law, and having heard oral argument, finds the Commissioner's decision denying benefits should be reversed and remanded for further proceedings consistent with this opinion.

*Facts and Procedural History*

On April 14, 2015, Roxanne Everhart filed her application for DIB and SSI, alleging onset of disability on February 13, 2015. After the application was denied at the lower levels, a hearing was held before an administrative law judge ("ALJ") on August 11, 2016. An unfavorable decision was issued on September 23, 2016. The Appeals Council denied review. The case is now before this court on appeal.

The ALJ found that Everhart had severe impairments of hypertension, osteoarthritis, gastroesophageal reflux disease, degenerative disc disease, depression, and anxiety. After

determining that the claimant did not meet any listed impairment, the ALJ determined Everhart's residual functional capacity, finding she could perform medium work with the following limitations: lifting, carrying, pushing, and pulling up to 50 pounds occasionally and 25 pounds frequently; standing and walking up to 6 hour in an 8-hour workday; sitting up to 6 hours in an 8-hour workday; occasionally reaching overhead bilaterally, stooping, and crouching; simple, routine, and repetitive tasks, and making simple work-related decisions; simple, direct, and concrete supervision; and incidental contact with coworkers and the general public.

At step four, the ALJ found that Everhart was incapable of performing past relevant work as a therapist. However, relying on the testimony of a vocational expert, the ALJ found that other jobs exist in significant numbers in the national economy that claimant can perform, namely sandwich maker and price tag ticker. The ALJ thus found claimant was not disabled.

The claimant asserts the ALJ's decision is not supported by substantial evidence and is not based upon proper legal standards because the ALJ (1) failed to resolve a possible conflict between the VE's testimony and the *Dictionary of Occupational Titles* and (2) improperly discounted the opinion of claimant's treating psychiatrist.

## *Law and Standard of Review*

This court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence

of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164(5th Cir. 1983)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case *de novo*, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434(5th Cir. 1994); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Harrell*, 862 F.2d at 475. If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential process.[1] The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability, and if the claimant is successful in sustaining his burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[2] First, claimant must prove he is not currently engaged in substantial gainful activity.[3] Second, claimant must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ."[4] At step three, the ALJ must conclude claimant is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R.

---

[1] *See* 20 C.F.R. § 404.1520 (2012).
[2] *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).
[3] 20 C.F.R. § 404.1520(b) (2012).
[4] 20 C.F.R. § 404.1520(c) (2012).

Part 404, Subpart P, App. 1.[5] Fourth, claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his past relevant work.[6] If claimant is successful at all four of the preceding steps, the burden shifts to the Commissioner to prove, considering claimant's residual functional capacity, age, education, and past work experience, that he is capable of performing other work.[7] If the Commissioner proves other work exists which claimant can perform, claimant is given the chance to prove that he cannot, in fact, perform that work.[8]

## *Analysis and Discussion*

### I. CONFLICT BETWEEN VE AND DOT

Among other limitations, the ALJ limited Everhart to occasionally reaching overhead bilaterally and included that limitation in his hypothetical to the VE. The VE testified that such a hypothetical individual could perform the medium, unskilled job of sandwich maker (DOT 317.664-010) and the light, unskilled job of price tag ticker (DOT 209.587-034). However, according to the DOT and its companion volume, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (SCO), sandwich maker requires constant reaching, while price tag ticker requires frequent reaching. The DOT defines "reaching" as "[e]xtending hand(s) and arm(s) in any direction." App. C, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* C–3; *see also* SSR 85-15.

---

[5] 20 C.F.R. § 404.1520(d) (2012). If a claimant's impairment meets certain criteria, that impairment is of such severity that it would prevent any person from performing substantial gainful activity. 20 C.F.R. § 404.1525 (2012).
[6] 20 C.F.R. § 404.1520(e) (2012).
[7] 20 C.F.R. § 404.1520(f)(1) (2012).
[8] *Muse*, 925 F.2d at 789.

Claimant argues the VE's testimony created a possible conflict with the DOT, and the ALJ erred in failing to resolve that conflict as required by SSR 00-4p.

The Fifth Circuit has not addressed the issue directly. Claimant suggests the proper course is that followed by a bevy of sister circuits. *See, e.g., Pearson v. Colvin*, 810 F.3d 204 (4th Cir. 2015); *Moore v. Colvin*, 769 F.3d 987 (8th Cir. 2014); *Kemp v. Colvin*, 743 F.3d 630 (8th Cir. 2014); *Prochaska v. Barnhart*, 454 F.3d 731 (7th Cir. 2006). SSR 00-4p sets forth multiple responsibilities and places them all on the ALJ. SSR 00-4p, at *1. The Ruling

> emphasizes that before relying on VE or VS evidence to support a disability determination or decision, our adjudicators must: Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the [DOT or SCO], and Explain in the determination or decision how any conflict that has been identified was resolved.

*Id.* To identify and resolve conflicts, the ALJ must "[a]sk the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT," and if the VE's evidence "appears to conflict with the DOT," the ALJ must "obtain a reasonable explanation for the apparent conflict." *Id.* at *4. The Ruling places the affirmative duty on the ALJ to resolve any conflicts *before* relying on VE evidence, to explain in the decision how he or she resolved the conflict, and to "explain the resolution of the conflict *irrespective of how the conflict was identified*." *Id.* (emphasis added).

The parties disagree as to which conflicts the ALJ must identify and resolve. The Court adopts the Eighth Circuit's reasoning on this issue:

> As to the second issue, the language of the Ruling also explains which conflicts the ALJ must identify and resolve before relying on the vocational expert's testimony. Though SSR 00–4p uses several adjectives to describe the relevant conflict, the most common and, we believe, the most compelling is "apparent." See SSR 00–4p, at *2, *4 (requiring that the ALJ "elicit a reasonable explanation" for "an apparent unresolved conflict" and "obtain a reasonable explanation for the apparent conflict"). "Apparent," of course, has two definitions: "obvious," and "seeming real or true, but not necessarily so." Apparent, *Oxford Dictionary*,

http://www.oxforddictionaries.com/definition/apparent (last visited Dec. 1, 2015).[9] But the context of the word "apparent" in SSR 00–4p makes plain that the Ruling intends the latter meaning—that the ALJ must identify where the expert's testimony seems to, but does not necessarily, conflict with the [DOT]. For the Ruling explains that "[i]f the [vocational expert]'s . . . evidence appears to conflict with the [DOT], the adjudicator will obtain a reasonable explanation for the *apparent* conflict." SSR 00–4p, at *4. And the title of one of the Ruling's sections addresses "Conflicts (or Apparent Conflicts)," *id.* at *2; that title would be redundant if "apparent" meant "obvious."

*Pearson*, 810 F.3d at 209.

The Commissioner contends the ALJ included the occasional bilateral reaching limitation in his hypothetical, and the VE responded that such a limitation was compatible with the two listed jobs—thus resolving the potential conflict. The Commissioner further argues claimant waived the issue by not questioning the VE about any potential conflict during the administrative hearing. *See Carey v. Apfel*, 230 F.3d 131, 146-47 (5th Cir. 2000) ("[C]laimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing."). Nevertheless, the Fifth Circuit reached the merits. The VE testified that Carey, an amputee, could perform the jobs of usher, cashier, and ticket seller. *Id.* at 140. The ALJ asked the VE "to directly address the effects of Carey's amputation on his ability to perform the identified jobs," and the VE testified that "the identified jobs could be performed with the use of only one arm and hand." *Id.*

---

[9] Out of an abundance of caution, the Court visited the provided website for the *Oxford Dictionary* on July 16, 2018, and the provided definitions for "apparent" remain unchanged.

*Carey* predates SSR 00-4p, which unequivocally places the burden of identifying and resolving conflicts on the ALJ. The Court therefore rejects defendant's waiver argument. And although the decision predates the Ruling, even *Carey* required *some* explanation resolving the conflict. *Id.* at 146-47 ("To the extent that there is any implied or indirect conflict between the vocational expert's testimony and the DOT[,] we agree with the majority of the circuits that the ALJ may rely upon the vocational expert's testimony provided that the record reflects and adequate basis for doing so. . . . [T]he vocational expert's clear and unchallenged testimony that Carey could perform the identified jobs with one arm and hand is adequate, in the context of the record as a whole, to support the ALJ's determination that Carey could perform other available work.").

Here, there is an apparent (seeming true, but not necessarily so) conflict between the VE's testimony that someone limited to occasionally reaching overhead bilaterally could perform the jobs of sandwich maker and price tag ticker and the DOT's provision that those jobs require constant and frequent reaching respectively. *See Pearson*, 810 F.3d at 211 ("Although the [DOT] does not expressly state that the occupations identified by the expert require frequent bilateral overhead reaching, the [DOT]'s broad definition of "reaching" means that they certainly *may* require such reaching."); *accord Moore*, 769 F.3d at 989; *Kemp*, 743 F.3d at 633; *Prochaska*, 454 F.3d at 736. There is no evidence in the record that the apparent conflict was ever identified, let alone resolved. The ALJ merely asked the VE, "[I]s your testimony consistent with the information in the DOT and its companion publication or is it based on your knowledge,

education, training[,] and experience?" The VE replied "Both[.]"[10] The ALJ elicited no explanation. In the words of the Seventh Circuit,

> It is not clear to us whether the DOT's requirements include reaching above shoulder level, and this is exactly the sort of inconsistency the ALJ should have resolved with the expert's help. We cannot determine, based on the record, whether the expert's testimony regarding stooping or reaching was actually inconsistent with the DOT. That determination should have been made by the ALJ in the first instance, and his failure to do so should have been identified and corrected by the Appeals Council. We will defer to an ALJ's decision if it is supported by "substantial evidence," but here there is an unresolved potential inconsistency in the evidence that should have been resolved.

*Prochaska*, 454 F.3d at 736.

The ALJ's reliance on VE testimony without first identifying and resolving any apparent conflict, as required by SSR 00-4p, was error. The ALJ's decision is reversed and the case is remanded so that the ALJ can determine whether the job requirements identified by the vocational expert are, in fact, consistent with the definitions in the DOT and Everhart's limitations.

## II. MEDICAL OPINION EVIDENCE

Claimant's second argument is unavailing, but will be briefly addressed in the interest of completeness. Claimant argues that the ALJ erred by improperly discounting the weight assigned to the medical source statement of treating psychiatrist Dr. Canfield. Dr. Canfield's MSS explicitly provided that it covered a period from May 25, 2016, through June 29, 2016.[11] The ALJ gave this opinion only some weight because "the period covered by this opinion is only one

---

[10] Doc. 11, p. 66.
[11] Doc. 11-1, p. 934.

month, which does not appear to be a longitudinal understanding of the claimant's history and symptoms at the time he rendered this opinion."[12] The ALJ is free to reject the opinion of any physician—even that of a treating physician—when the evidence supports a contrary conclusion. *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000). Physicians' opinions that are so brief and conclusory that they lack persuasive weight, opinions that are not supported by medically acceptable techniques, or when the evidence supports a different conclusion provide sufficient grounds for an ALJ assigning little or no weight to the opinion. *Id.* at 456. An ALJ must perform a detailed analysis of a treating physician's opinion only in the absence of controverting medical evidence from other treating and/or examining physicians *Id.* at 453. The presence of competing medical opinions from treating or examining physicians takes the case outside the purview of *Newton*.

The ALJ gave greater weight to examining consultative psychiatrist Dr. Adams's opinion. Dr. Adams noted that claimant admitted she had no medication side effects, that she lived alone, prepared meals, performed chores, drove her car, and handled her finances.[13] She observed that claimant was alert, fully oriented in all spheres, open, and cooperative. Dr. Canfield, on the other hand, had only been treating claimant for one month and completed a check-list MSS without providing treatment records, findings, or other medical evidence. More recent evidence showed claimant was fully responsive, oriented, had appropriate affect,

---

[12] Doc. 11, p. 20.
[13] Doc. 11, p. 534.

cooperative behavior, intact memory, and good concentration.[14] On an independent review, the court finds the ALJ did not err in assessing the medical opinion evidence.

### *Conclusion*

Because the ALJ failed to comply with SSR 00-4p, the Court cannot conclude that there is substantial evidence supporting the outcome of the administrative hearing. The case is remanded so that the ALJ may perform the necessary inquiry under that Ruling and resolve whether there are, in fact, jobs in the national economy which Everhart can perform. A final judgment consistent with this opinion will be entered.

SO ORDERED, this the 27th day of July, 2018.

/s/ David A. Sanders
UNITED STATES MAGISTRATE JUDGE

---

[14] Doc. 11-1, p. 985, 989, 996.